### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Case Number: 21-mj-673** |
| **ALEXUS CAMERO,** | : | |
| | : | **Under Seal** |
| **Defendant.** | : | |

### GOVERNMENT'S MEMORANDUM IN SUPPORT OF
### PRETRIAL DETENTION OF DEFENDANT ALEXUS CAMERO

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in support of its request that defendant Alexus Camero be detained pending the trial of this matter pursuant to 18 U.S.C. § 3142(f)(1)(A), because the offense involves a crime of violence and because there is no condition or combination of conditions that will reasonably assure the appearance of the defendant or the safety of any person and the community. The defendant was arrested on November 30, 2021, and he has been charged via Criminal Complaint with the Distribution of Child Pornography, in violation of Title 18 United States Code Section 2252(a)(2). The Government now files this Memorandum to supplement the record before the Court. As detailed below, an analysis of the factors set forth in 18 U.S.C. § 3142 leads to the conclusion that detention is appropriate.

### APPLICABLE LEGAL STANDARD

The Distribution of Child Pornography is a felony under chapter 110 and is, therefore, a crime of violence. Furthermore, it is also an offense involving a minor victim under section 2252(a)(2) and thus, under 18 U.S.C. § 3142(e)(3)(E), creates a rebuttable presumption that no

1

condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. This presumption "operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (observing that the presumptions in § 3142(e) "are rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released"); *see also United States v. Hir,* 517 F.3d 1081, 1086 (9th Cir. 2008).  Even if the defendant does not pose a flight risk, danger to the community by itself is sufficient reason to order pretrial detention.  *United States v. Salerno*, 481 U.S. 739, 755 (1987).

In determining whether the defendant has overcome that presumption, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g). Even when the defendant has offered evidence to rebut the presumption of dangerousness, the presumption remains a factor in the court's analysis of the § 3142(g) factors. *See United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1983) ("Use of that word [rebutted] in this context is somewhat misleading because the rebutted presumption is not erased. Instead, it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."). As the Sixth Circuit has observed, "[t]he presumption [of dangerousness] remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should

ordinarily be detained prior to trial." *United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010) ("To rebut the presumption, therefore, a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm.'").

I.    **Analysis**

For the reasons that follow, the government submits that that the defendant cannot rebut the presumption that he shall remain detained, as there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community.

A.    **Nature and Circumstances of the Charged Offense**

Members of the Child and Human Trafficking Task Force (CEHTTF) have infiltrated a dating application which is known as a place where individuals interested in the exploitation of children meet and engage in conversation about the sexual abuse of minors.  Posing in an undercover capacity (UC), law enforcement set up a profile with a username that explicitly conveys that the user is a father interested in sexually abusing children.

On August 21, 2021, the defendant contacted the UC and expressed a shared sexual interest in "young" children.  As the conversation progressed, the UC asked the defendant whether or not he had an age preference.  In response, the defendant replied, "I don't care" and "No limits."  When the defendant learned that the UC had a son, who was about to turn ten and who he was sexually abusing, the defendant responded, "That's hot…I wanna watch."  The defendant informed the UC that, "I'm very mich into dads playing with their son" and that he watches "a lot of dad son incest videos." At one point in the conversation, the defendant asked the UC if he could "borrow" his son for the night, so that he and another like-minded offender could sexually abuse the little boy.

This defendant did far more than chat with an anonymous stranger over the internet about his sexual interest in children.  He also used Telegram, a direct messaging system with end-to-end

encryption, to distribute videos depicting the sexual assault of very young children.  This defendant also specifically asked the UC to sexually abuse his son, and to record it, for his own sexual gratification.  When asked what kind of picture he wanted, the defendant responded, "I don't know…Your finger or dick in/on his hole."

As detailed above, the nature and circumstances in this case make clear that this factor weighs heavily in favor of detention, because the defendant's crimes have been perpetrated against the most vulnerable members of our society:  children.  Children depicted in images and videos depicting their sexual abuse are traumatized and victimized in the worst way imaginable at the time the images were created, and they are re-victimized and re-traumatized each and every time an individual, like the defendant, views the images for their own sexual gratification.  As explained by the Sixth Circuit in a child pornography case:

> ...we have numerous victims in a case like this, not one victim. Every image of a child, every image of a non-adult engaged in any type of sexual activity or any type of pose without clothing or any type of exploitation constitutes an additional case of victimizing a child. Without a demand for that type of information and that type of viewing from persons like this defendant, we don't know how many child abuse cases we could prevent. And as long as there is a demand to purchase images of child pornography, there is going to be an unending stream of child abuse of…children who are forced into these roles.
>
> ...every image has a child who has been exploited and abused, and that is the concern I have. It is the concern that I have when people are engaged in serially doing this, the effect it has on children throughout the world and the effect it has on their future lives.

*See United States v. Miller*, 665 F.3d 114, 121-122 (6th Cir. 2011)(quoting the district court) (rejecting an attack on the child pornography sentencing guidelines and highlighting the grave harm caused to the victims depicted in child pornography images and the evidence that traffickers and possessors of child pornography are the impetus for the creation of more sexual abuse of minors).

Courts have recognized the serious nature of the very offenses that this defendant has committed, which is why these offenses carry a mandatory minimum sentence of five years.  *See* 18 U.S.C. § 2252(b)(1) As such, the defendant should be detained pending trial.

**B. The Weight of the Evidence Against the Defendant**

The evidence against the defendant is extremely strong.  The government is in possession of the chats detailed in the Affidavit in support of the Criminal Complaint, as well as the graphic videos that he sent to the UC.  The investigation has revealed that when the defendant was using KIK to distribute child sexual abuse materials, he was doing so using an IP address that was tied to his home in Washington, D.C.

When law enforcement searched the defendant's home, pursuant to a search warrant on November 30, 2021, three digital devices were recovered:  a laptop, an external hard drive, and a cellular telephone.  Forensic analysis of these devices is currently underway.  While law enforcement was searching his residence, the defendant was read his *Miranda* warnings and he agreed to speak with law enforcement.  He admitted to using KIK, and to using the display name that chatted with the UC in August of 2021.  The defendant also admitted that he was chatting with the father of a young boy, and when he was shown the conversation that he engaged in with the UC he said he recognized them.  The defendant stated that he used Telegram because he believed it was "safe" and that the videos and chats could not be recovered.  Given the weight of the evidence, there is no doubt that this factor also weighs heavily in favor of detention, as well.

**C. The History and Characteristics of the Defendant**

The government acknowledges that the defendant has no criminal history.  However, the fact that the defendant has no criminal history does not mean that he has not engaged in prior criminal conduct, particularly in offenses involving not only the online exploitation of children,

but the hands-on sexual abuse of children.

This Court is well-aware that the online sexual exploitation of children, such as the distribution of child pornography, and the hands-on sexual abuse of children are crimes that are committed in secret. This secrecy, combined with the overwhelming presence of digital devices and the near universal access to the internet, makes detection of these criminal offenses difficult. It is not unusual for an offender to only be discovered because he has the misfortune of law enforcement infiltrating a secret group of like-minded offenders, who use the Internet to sexually abuse and exploit children.

The mere lack of an arrest record's significance should also be called into question in cases involving the sexual exploitation and abuse of children, because it is well-known that children often do not disclose sexual abuse, and that these types of crimes are wildly underreported. *See United States v. Gregory Todd Numan*, 3:160cr000065(TMB)(DAK)(February 26, 2018: Expert Testimony of Clinical Psychologist Darrell Turner). In *Numan*, Dr. Turner provided expert testimony to the Court to explain why a reliance on the lack of prior criminal history of an offender charged with sexual offenses committed against children does not serve as a reliable indicator of their future risk for reoffending. As explained by Dr. Turner:

> "One of the main problems is the fact that these offenses
> are among the most undetected offenses that there are. This
> is not like bank robbery or murder, where it's generally assumed
> and expected that it's going to be detected and reported. We know
> from research that about only about five percent of sexual offenses against
> children are ever reported.
>
> Of those, of that five percent, about another five percent
> result in a conviction. So we're talking about an exponentially
> small number of offenses that are reported and accounted for.
> So it's sort of akin to saying there were only four drunk people in
> New Orleans in Mardi Gras this year because there were only four

     arrests for public intoxication, and it's not a good representation of what's
actually going on out there. So to say it without the qualifier that,
hey, this is a gross underestimate, but you know, so far, this is what
we've been able to find, I think, is misleading and very, very
dangerous."

at pages 22-23.  *See also* K. London, M. Bruck, S. J. Ceci & D. W. Shuman, *Disclosure of Child Sexual Abuse: What Does the Research Tell Us About the Ways Children Tell?*, 11 PSYCHOLOGY, PUB. POL'Y & L. 1, 194-226 (American Psychological Association, 2005)(finding in a study of adult retrospective victim studies about child sex abuse, approximately 60 – 70% of adults sexually abused as children did not recall disclosing the abuse during childhood); *See also* D. W. Smith, E. J. Letourneau, B. E. Saunders, D. G. Kilkpatrick, H. S. Resnick & C. L. Best, *Delay in Disclosure of Childhood Rape: Results from a National Survey*, 24 CHILD ABUSE & NEGLECT 2, 273-87 (2000)(the results of the study found that only 12% of child rape victims' assaults were reported to law enforcement authorities.).  As such, the fact that the Defendant lacks a criminal record, given the ways in which these types of crimes are committed and the reluctance and inability of the victims to disclose, should be given less weight given the nature of the offense he is currently charged with.

## D. The Nature and Seriousness of the Danger to Any Person or the Community

     The facts and evidence in this case establish that this defendant represents a grave danger to the community. As mentioned above, the distribution of child pornography presents a serious danger to the community, which results in severe mental, emotional, and physical trauma to the countless number of children who are victimized by offenders like the defendant and others with a demonstrated sexual interest in children.  The defendant, as a consumer of this material, furthers the demand for new material depicting the graphic, sexual exploitation and abuse of defenseless children.  In fact, this offender specifically asked the UC to sexually abuse a child, to

photograph it, and to distribute it to him for his own sexual gratification.  There can be no doubt

that it is this type of harm that led Congress to create the statutory presumption of detention in

these cases.

That child pornography offenses are serious is a fact noted by the Supreme Court. At

least as early as the landmark decision, New York v. Ferber, 458 U.S. 747 (1982), the Supreme

Court referenced numerous research materials detailing the harm to children as a result of the

production and trafficking of child pornography.

> "[P]ornography poses an even greater threat to the child victim than does
> sexual abuse or prostitution. Because the child's actions are reduced to a
> recording, the pornography may haunt him in future years, long after the
> original misdeed took place. A child who has posed for a camera must go
> through life knowing that the recording is circulating within the mass distribution
> system for child pornography."

 Shouvlin, Preventing the Sexual Exploitation of Children: A Model Act, 17 Wake Forest

L.Rev. 535, 545 (1981). *See also* Child Exploitation 292 ("[I]t is the fear of exposure and the

tension of keeping the act secret that seem to have the most profound emotional repercussions");

Note, Protection of Children from Use in Pornography: Toward Constitutional and Enforceable

Legislation, 12 U.Mich.J. Law Reform 295, 301(1979)(interview with child psychiatrist) ("The

victim's knowledge of publication of the visual material increases the emotional and psychic

harm suffered by the child"). 458 U.S. 758, n.9.

Moreover, as the Eastern District of New York has found:

> ...the issue is not only defendant's potential
> abuse of children and his interaction with children
> if on bail, but also his ability, if he is released on bail, to attempt to possess additional
> child pornography, or to communicate and interact with (via email, internet, or phone)
> others involved in the possession, sale, and distribution of child pornography or other
> sexual abuse of children, which would also create a clear danger by facilitating the
> criminal and dangerous exploitation of children by other individuals.

*United States v. Reiner*, 468 F.Supp.2d 393, 397 (E.D.N.Y. 2006). The *Reiner* court further found that there were no conditions in that case that could reasonably assure the safety of the community "[i]n this day and age, with devices such as cellphones, Blackberries, and laptops..." Id. at 399; *see also United States v. Blankenship*, 2008 WL 1925137 (S.D.W.Va. April 29, 2008) (S.D.W.Va. April 29, 2008)(unpublished)(noting the ease of accessing the internet by means of various devices and stating "[t]he Court finds that the evidence clearly and convincingly establishes that, confined to his home and electronically monitored, defendant would not be prevented from obtaining the means to access the internet and attempting again to obtain child pornography and in this poses a danger to children and the community"); *United States v. Doyle*, 2007 WL 1097844, *1 (W.D.Va. 2007)(finding danger of future offenses "especially considering that pornographic images of children are widely available on the internet and can be easily accessed by a personal computer"), conviction rev'd on other grounds, 650 F.3d 460 (2011).

As detailed above, this Defendant was able to access dating and messaging applications to discuss the sexual exploitation of children and to traffic in images and videos depicting the violent sexual abuse of children, all through the use of a handheld mobile device and the internet – both of which are widely available - which makes these offenses very difficult to detect. Furthermore, the Defendant has demonstrated some technological savvy by using messaging applications that use end-to-end encryption to commit his criminal offenses. This sophistication makes his criminal conduct even harder to detect and deter. Should he be released, this Court will have no assurances that the defendant would not resume his criminal conduct in accessing the internet to communicate with others and to traffic in child pornography.

It should also be noted that, on June 29, 2021, the Sentencing Commission issued a new report on the Federal Sentencing of Child Pornography Non-Production Offenses.

https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-non-production-offenses.  This new report reflects upon the Commission's report from 2012, and compiles data from 2019.  The Commission emphasized the seriousness of non-production offenses, noting that child pornography offenses normalize the sexual abuse of children and may promote existing tendencies towards sex offending and the production of new images.  *See* Report at page 1.  The Commission also found that the rise of the internet facilitated the growth of online child pornography "communities" in chat rooms and other online platforms.  *Id.*  While the Commission notes that some of the sentencing enhancements are no longer are helpful in distinguishing among offenders, the Commission noted additional factors that a Court can consider at sentencing, which the Commission found to be helpful in determining the level of danger a particular offender poses to the community:  (1) the content of the offender's child pornography collection and nature of the offender's collecting behavior; (2) the offender's degree of involvement with other offenders, particularly in an internet community devoted to child pornography and child sexual exploitation; and (3) the offender's engagement in sexually abusive or exploitative conduct in addition to the child pornography offense.  *Id.*

As detailed above, law enforcement found the defendant on a dating application that is known to be utilized with individuals interested in the sexual abuse and exploitation of children. He initiated contact with the UC, and discussed that he had a collection of incest materials.  We know from the images that he sent to the UC, as well as his comments about the UC's purported nine-year-old son, that he is sexually attracted to young children.  As forensics are ongoing, the full extent of this offender's collection is unknown.  However, as detailed above, this Defendant not only distributed child pornography, but he also actively solicited other offenders to create and share images depicting the sexual assault of children.  The presence of these additional

factors in this case, which have been recognized by the Sentencing Commission as aggravating factors, further demonstrate that there is no condition of combination of conditions that will reasonably assure the safety of any other person or the community.

Disturbingly, the Commission's report detailed findings that, after tracking over 1,000 child pornography offenders who had been released, 27.6 perfect were rearrested within three years.  *See* Report at page 7.  Such a statistic is probably lower than the true percentage that recidivate, because it only measures re-arrests- not offending behavior.  For these reasons, it is clear that the defendant poses a significant danger to the community and given these risks, there are no condition or combination of conditions that will reasonably keep the community safe if the defendant is released.  He has been, and continues to be, a danger to some of the most vulnerable members of out community:  children.  As such, this factor weighs heavily in favor of detention.

## **CONCLUSION**

For all of the reasons set forth above, the consideration of the evidence in this case and the applicable statutory factors, including the presumption that applies in this case, compels the conclusion that the Defendant should be detained pending trial.

Respectfully submitted,

MATTHEW D. GRAVES
United States Attorney
D.C. Bar No. 481052

_____

 Amy E. Larson
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W.,
Washington, D.C. 20530
 202-252-7863
 Amy.Larson2@usdoj.gov